UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| BRENTREZ JARMYKUS MCPHERSON, </br></br>   Plaintiff, </br></br> v. </br></br> POPE BENEDICT, *et. al.*, </br></br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) )   CV624-020 |

### ORDER

*Pro se* Plaintiff Brentrez Jarmykus McPherson has filed a Complaint alleging various claims, including claims, pursuant to 42 U.S.C. § 1983, that his constitutional rights were violated at Smith State Prison. *See generally* doc. 1. The Court granted him leave to proceed *in forma pauperis*, doc. 9, and he has returned the required forms, docs. 11 & 12. The Court, therefore, proceeds to screen his Complaint. *See* 28 U.S.C. § 1915A. Before screening, however, the Court must address several procedurally improper documents, purporting to seek summary judgment on his claims. *See* docs. 6 & 13.

At the same time he filed his Complaint, McPherson submitted a document titled "Motion for Summary Judgment." Doc. 6 at 1. That

1

document asserts that "[t]here's no dispute[ ] as to Claims 1 and 4" of his Complaint. *Id.* It does not assert any facts and does not even attempt to comply with any of the requirements for a motion under Federal Rule of Civil Procedure 56. He later filed a similarly deficient "motion" seeking summary judgment on the claims he asserts against Defendant Julia Roberts.[1] *See* doc. 13. That "Motion" includes a declaration that appears intended to support some version of the wholly discredited "sovereign citizen" ideology, discussed below, but which bears no discernable relation to any cognizable legal claim. *See id.* at 3-4. It also includes what appears to be one page from a criminal judgment entered by a Douglas County, Georgia Superior Court. *See id.* at 6. Since neither

---

[1] He subsequently filed a "supplement" to that Motion, which includes various documents of uncertain significance and a "declaration" alleging additional misconduct by individuals who are not named as defendants in his Complaint. *See generally* doc. 14. Finally, he has submitted a "declaration" not clearly connected to any other filing that asserts he "is an internationally recognized lawful traveler from the biblically recorded histories of the original Ancient Royal United Afrikan territorials of Ancestries of the Birth of nation Israel lands as a decedent of Ancient, Royal Bloodlines of casual ancestry connection that link the clear and obvious biblical evidences of me lawfully reigning as the Preserved 9-Ether Ancient BaBa Angelical Ancestor of the Last Hebrew Jewish Priestly Black Panther seed . . . ." Doc. 15 at 2. It also includes correspondence addressed to the Clerk of Court asking "can you help me out with the last page, I done tried 75 times to draft such Federal Tort in regards to my civil action . . . ." *Id.* at 6. The "last page" of McPherson's filing includes the heading "Sexy Ladies Actresses" and two blank lists numbered 1-14 and 1-10. *Id.* at 7. Whatever the intent of those filings or their purported relationship to the "motions," they do not alter the Court's conclusion that the "motions" are frivolous.

"motion" bears any resemblance to the kind of motion contemplated by Rule 56(a) or asserts any discernable legally meritorious contention, both are **DISMISSED** as frivolous. Docs. 6 & 13. *Cf. Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (a pleading "where none of the legal points are arguable on their merits," or which "lacks an arguable basis either in law or in fact," is legally frivolous). McPherson remains free to move for summary judgment at a more appropriate time, if he can provide the support for such a motion required by Rule 56. *See, e.g.,* Fed. R. Civ. P. 56(c)(1); S.D. Ga. LR Civ. 56.1.

Having addressed McPherson's "motions," the Court can proceed to screen his Complaint. Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent

standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

McPherson's Complaint is what is "often disparagingly referred to as [a] 'shotgun pleading.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has engaged in a "thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight." *Id.* at 1321 & n.9 (collecting cases). The crux of the Court's admonishment of shotgun pleadings is that they fail to adhere to pleading requirements designed to ensure that a defending party is provided enough clarity to adequately respond. *Cf.* Fed. R. Civ. P. 8-11 (rules for civil pleadings before the Federal Courts). They typically present in four varieties: (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a pleading that does not separate into a different count each cause of action or claim for relief; and (4) a pleading that asserts multiple claims against multiple defendants without specifying which defendant allegedly committed

which claim. *Adams v. Huntsville Hosp.*, 819 Fed. App'x. 836, 838 (11th Cir. 2020) (citing *Weiland,* 792 F.3d at 1321–23).

McPherson's Complaint, which extends to approximately 85 pages, *see* docs. 1—1-14, does separate his claims into separate counts and does not incorporate prior allegations, it is, however "replete with conclusory, vague, and immaterial" allegations, including some that are nonsensical, and asserts multiple claims against multiple defendants without clearly identifying which defendant allegedly committed which claim. McPherson's statement of his second claim exemplifies the character of the pleading as a whole. It states, in part but otherwise unedited:

> The alleged defendant(s) Brian Dennis Adams, the Department of Corrections , (Georgia Department of Corrections, and all employed employees / employers failed to respond in an objectively reasonable manner to reduce / minimize Plaintiff(s) notifications of situations of being continuously exposed to dangerous unavoidable unreasonable risks of irreparable death causation harm and the continued pattern of criminal conducts of assaults upon Plaintiff(s), by therein above alleged defendant(s) that intentionally and recklessly disregarded the mandatory wearing of corona virus facemasks . . . . Doc. 1-3 at 6.

"A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v.*

5

*Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quoting *Weiland*, 792 F.3d at 1320). Before doing so, plaintiffs are entitled to a single opportunity to amend their pleading in order to better present their claims. *See id.* at 1296. Plaintiff will have an opportunity to amend his Complaint, as discussed below.

In addition to the "shotgun" character of the Complaint is its reliance, in part, on wholly discredited "sovereign citizen" ideology. McPherson's ideology is apparent early in the Complaint. He purports to assert claims on behalf of "BRENTREZ JARMYKUS MCPHERSON—Artificial Person," and "Brentrez Jarmykus McPherson—Natural Person." Doc. 1 at 2. The United States Court of Federal Claims has explained that "sovereign citizens" often seek relief under "the sovereign citizen redemption theory," which refers to the belief "that when the government began issuing legal tender in 1933, all Citizens were pledged as collateral for the national debt resulting from the loss of value from the gold standard." *Wood v. United States*, 161 Fed. Cl. 30, 34 (2022) (internal quotation marks and citations omitted). Under the theory, "[a]ll Sovereign Citizens therefore have two identities: a real 'private' individual and a fictional 'public' person. Refusing to be used as

collateral can hypothetically result in access to a trust fund held in the fictional person's name at the U.S. Treasury." *Id.* Such theories also frequently invoke "a distinction between their names written in all capital letters and the same names written with just the initial letters capitalized." *Id.*

"Sovereign citizen" theories have been consistently rejected by the federal courts as utterly frivolous, regardless of how the litigants portray themselves. *See, e.g., United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts routinely reject sovereign citizen legal theories as "frivolous") (citing *United States v. Benabe*, 654 F.3d 753, 761-67 (7th Cir. 2011) (recommending that sovereign citizen theories "be rejected summarily, however they are presented")); *Roach v. Arrisi*, 2016 WL 8943290 at *2 (M.D. Fla. Jan. 7, 2016) (noting that sovereign citizen theories have not only been consistently rejected by the courts, but they have been described as "utterly frivolous," "patently ludicrous," and "a waste of . . . the court's time, which is being paid for by hard-earned tax dollars") (citation omitted)); *United States v. Alexio*, 2015 WL 4069160 at *3 (D. Hawaii July 2, 2015). This Court has recognized that such claims are properly dismissed as frivolous. *See, e.g., Owens v. Wilcher*, 2022 WL

7

2440808, at *2 (S.D. Ga. July 5, 2022); *Williams v. Deal*, 2018 WL 5624309, at *1 (S.D. Ga. Oct. 19, 2018) ("To call 'sovereign citizen' arguments 'nonsense' would be an insult to nonsense; such arguments are utterly worthless . . . ."). Given the character of McPherson's pleading, the Court is not able to discern the extent to which his claims are infected by the meritless "theory," *see, e.g.,* doc. 1-5 at 3-5, but to the extent that any amended complaint he submits asserts "sovereign citizen" claims, they will be summarily dismissed.

Finally, at least some of McPherson's claims and allegations are wholly frivolous. His allegations involving Pope Benedict XVI are a clear example. He alleges, in part but otherwise unedited:

> The deprivations of both Plaintiff's Brentrez Jarmykus McPherson's naturalized human being person—LEVI KING—High Chief LEVI and EPHAI Priest—EliYAH to COME as Ha'Mashiah "HAHESHIAH" and additional Plaintiff BRENTREZ JARMYKUS MCPHERSON's person damaged, injured, invaded, rights, privileges, immunities, properties, properties of birthrights, legal Universal Declaration of Human Rights, by personal involved wrongful intentional, conscious reckless disregards, deliberate indifference, callous indifference, and negligence of actions, committed and caused, by defendant Pope, for the Worldly Catholic Church, whom, unlawfully seized inherited birthrights, of properties, of Israel (Jacob), lawfully, and, spiritually, claimed by Plaintiffs', as LEVI KING, and Seed of Abraham, of the LEVI tribes of, Judah territories, of Israel, and Royal Power High Chief LEVI and EPHAI Priest, over his

>inherited Royal everlasting LEVI Priesthood, claimed, as well, by Plaintiff(s)', as Royal, properties attacked, invaded, and unlawfully seized, by defendant, during, Slavery, of, my, ancient foregather ancestors, along with any and all documented / undocumented properties, as claimed." Doc. 1-5 at 8.

He alleges the claims arose "[s]omewhere around 60 B.C.." *Id.* at 9. He also alleges that others were involved in the claim, to wit: "Rome. Roman Catholic Worldly Church. Roman Empire. Antiochus Family. Caeser Family." *Id.* at 10.

The Supreme Court has explained that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Although dismissal where a defendant has not filed an answer is not preferred, it is permissible where the complaint is "patently frivolous." *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 (11th Cir. 1983); *see also Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008) ("We have recognized that district courts have the inherent power to *sua sponte* dismiss frivolous suits without giving notice to the parties."); *Rosetta v. United States*, 2017 WL 4415674, at *1-2 (S.D. Ga. Aug. 29, 2017), *adopted* 2017 WL 4391720 (S.D. Ga. Sept. 29, 2017) ("[T]he Court has an

obligation to dismiss any complaint that is factually and legally frivolous.").

The Supreme Court has further explained that the statute authorizing proceedings *in forma pauperis* gives the Court "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). To the extent that McPherson includes factually frivolous claims in any amended complaint he submits, they too will be summarily dismissed.

Despite the clear defects in McPherson's Complaint he is entitled to an opportunity to amend it before dismissal.[2] *See, e.g., Jenkins v. Walker*,

---

[2] Although McPherson's inclusion of facially frivolous material combined with the "shotgun" character of his pleading make it impossible for the Court to thoroughly analyze his allegations, it appears that some might be amended to state a cognizable, non-frivolous, claim. For example, he alleges that he was deprived of communications for a period in excess of thirty days, but of an otherwise unspecified duration. *See* doc. 1-3 at 14. McPherson's vague allegations are clearly insufficient to state a claim, but denial of access to communication facilities can, in some circumstances, violate the Constitution. *See, e.g., Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir.1996); *Padgett v. Mosley*, 2007 WL 2409464, at *8 n. 2 (M.D. Ala. Aug. 20, 2007) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)).

620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."). Accordingly, McPherson is **DIRECTED** to submit an Amended Complaint clarifying his allegations by no later than December 2, 2024. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). McPherson is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982).

Finally, the Court must assess McPherson's filing fee. *See* 28 U.S.C. § 1915(b). McPherson's Prisoner Trust Account Statement indicates that he the average monthly deposits to and balance in his prison trust account were $100 in the six months prior to the Complaint. Doc. 12 at 1. He, therefore, owes a $20.00 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," based upon average deposits to or balance in a prisoner's account, under a

specific 20 percent formula).  His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED**, this 13th day of November, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA